# NO. 12-18-00075-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TOSCHA FAY SPONSLER,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Toscha Fay Sponsler appeals her convictions for, among other things, evading arrest with a vehicle while using a deadly weapon and aggravated assault on a public servant with a deadly weapon. In two issues, Appellant challenges the sufficiency of the evidence supporting her convictions. We affirm.

### BACKGROUND

Appellant was arrested for evading arrest or detention on foot after she fled an officer attempting to investigate a recent theft from a nearby retail store. She was handcuffed and placed in the back seat of a police patrol car. While officers investigated further, Appellant managed to slip one of her hands out of the handcuffs and flee in the patrol car. A high speed chase involving multiple officers ensued. During the chase, Appellant steered her vehicle toward an officer, whose patrol vehicle was parked in the center turn lane. The officer and Appellant took evasive maneuvers and narrowly avoided a collision. After nearly twenty-five minutes of pursuit, officers apprehended Appellant.

Appellant was charged by indictment with, among other things, evading arrest with a vehicle while using a deadly weapon and aggravated assault on a public servant with a deadly weapon. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. The jury found

Appellant "guilty" as charged on each of these counts. Following a trial on punishment, the jury found certain enhancement allegations to be "true" and assessed Appellant's punishment at imprisonment for forty-five years on each of the aforementioned offenses. The trial court sentenced Appellant accordingly, and this appeal followed.

**EVIDENTIARY SUFFICIENCY**

In her first issue, Appellant argues that the evidence is insufficient to sustain the jury's finding that she is "guilty" of aggravated assault on a public servant. In her second issue, Appellant contends that the evidence is legally insufficient to support that she used a deadly weapon in conjunction with the offenses at issue.

**Standard of Review**

The *Jackson v. Virginia*[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152,

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See* ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See* ***Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Aggravated Assault on a Public Servant

To prove the Appellant committed aggravated assault on a public servant, the State was required to demonstrate that she (1) intentionally or knowingly (2) threatened a person[2] with imminent bodily injury, (3) while exhibiting a deadly weapon, and (4) knew that the person was a public servant lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (West Supp. 2018), 22.02(a)(2), (b)(2)(B) (West 2011). The actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *Id.* § 22.02(c).

In the instant case, Lufkin Police Department Corporal Eduardo Ibarra testified that video footage admitted into evidence and taken by one of the pursuing patrol cars shows Constable Chad Wilson's marked unit stopped in the center turn lane with his emergency lights on. Ibarra further testified that Appellant swerved from the right lane to the left lane, causing half of the stolen patrol car she was driving to cross the line separating the left lane from the center turn lane. Thus, according to Ibarra's testimony, the patrol vehicle driven by Appellant was headed directly toward Wilson's patrol vehicle. Ibarra stated that if Wilson had not moved his vehicle, there would have

---

[2] The indictment specified that Appellant committed this offense against Chad Wilson.

3

been a "head-on" collision. The record reflects that Appellant drove the patrol car within three or four feet of Wilson's patrol vehicle before swerving back to the right. The record further reflects that Wilson was inside his patrol unit at this time.

Angelina County Constable for Precinct 3 Chad Wilson testified that he is an elected official and a licensed peace officer. Wilson further testified that when he became aware of the high speed chase, he planned to lay a spike strip on the roadway ahead of the stolen patrol vehicle. He identified Appellant in court as the person in the vehicle being pursued. Moreover, video footage taken from his patrol vehicle video was admitted into evidence. Wilson testified that the overhead emergency lights on his patrol vehicle were activated when he stopped in the center turn lane. He acknowledged that the wheels of his patrol vehicle were over the line separating the center turn lane from the left lane of oncoming traffic and that there was traffic behind him. Wilson stated that he intended to get out and deploy the spike strip, but Appellant's vehicle was fast approaching and he was unable to exit his vehicle in time to deploy the spikes. He further stated that he saw the patrol vehicle driven by Appellant cross both oncoming lanes and enter the center lane where he was stopped in his vehicle before she made an evasive maneuver back to the right. Wilson testified that Appellant's action caused him to feel threatened and fearful. Wilson further testified that Appellant was operating the stolen patrol vehicle in a manner capable of causing death or serious bodily injury and the approaching vehicles were travelling at a high rate of speed.

Furthermore, the jury considered evidence that Appellant (1) intentionally slipped out of her handcuffs and squeezed past the partition to access the front seat of the patrol car, (2) failed to stop for marked patrol cars pursuing her with their overhead lights and sirens activated, (3) intentionally evaded spike strips deployed in her path, and (4) attempted to remove the rifle from the patrol car's gun rack. Based on this evidence, the jury reasonably could find that Appellant acted intentionally or knowingly during the entirety of the high speed pursuit so as to evade arrest, including when she steered the stolen patrol car from the right lane to the left lane placing the stolen patrol vehicle temporarily in a head on collision course with Wilson's vehicle before swerving back into the right lane, missing Wilson's vehicle by only three to four feet.[3]

---

[3] Appellant notes in her brief that there is testimony that Wilson pulled his vehicle partially into the lefthand oncoming lane of traffic because his road spikes only were ten feet long and would not extend across two lanes of traffic. However, this evidence does not serve to negate evidence that Appellant steered the stolen patrol car toward Wilson's vehicle, which had its emergency lights activated.

## Vehicle as Deadly Weapon

To prove Appellant committed aggravated assault on a public servant, the State also was required to demonstrate that Appellant used or exhibited a vehicle as a deadly weapon during the commission of the offense. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). Appellant's use or exhibition of a deadly weapon also relates to her enhanced sentence for evading arrest with a vehicle. *See id.* §§ 12.35(c) (West 2011), 38.04(b)(1) (West 2016).

The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West Supp. 2018). "To determine whether the evidence supports a deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis." *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.–Corpus Christi 2010, pet. ref'd); *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.–Fort Worth 2010, no pet.) (citing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)); *see also Bowman v. State*, No. 12-12-00273-CR, 2013 WL 3874919, at *2 (Tex. App.– Tyler July 24, 2013, pet. ref'd) (mem. op., not designated for publication). We first "evaluate the manner in which the defendant used the motor vehicle during the felony." *Sierra*, 280 S.W.3d at 255. We then "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.* We must examine the record for evidence that there was someone present who was placed in danger of serious bodily injury or death. *See Drichas v. State*, 219 S.W.3d 471, 475–76 (Tex. App.–Texarkana 2007, no pet.).

In the instant case, the evidence reflects that Appellant led multiple officers on a high speed chase for over twenty-five minutes. The evidence further reflects that Appellant swerved to avoid spike strips and also swerved from the righthand lane across the dividing line for the center turn lane nearly striking head-on the patrol vehicle occupied by Wilson, which was stopped in the center turn lane. Lastly, Wilson testified that Appellant was operating the stolen vehicle in a manner capable of causing death or serious bodily injury.

## Summation

Based on our review of the entirety of the record, including the aforementioned evidence and video evidence taken from multiple patrol cars involved in the pursuit, we conclude that the jury reasonably could have found beyond a reasonable doubt that Appellant intentionally or knowingly threatened Wilson with imminent bodily injury and knew, or, having considered the fact that Wilson was in a marked patrol vehicle with its overhead lights activated, is presumed to

have known, that Wilson was a public servant lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B), (c). Based on our review of the record, we further conclude that the jury reasonably could have found that Appellant used the stolen patrol car in a dangerous manner, thereby placing Wilson in danger of serious bodily injury or death. Therefore, we hold that the evidence is legally sufficient to support the jury's "guilty" verdict and its "deadly weapon" finding for enhancement purposes. Appellant's first and second issues are overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered November 5, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 5, 2018**

**NO. 12-18-00075-CR**

**TOSCHA FAY SPONSLER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2017-0649)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*