# NO. 12-23-00099-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LARRY LYNN POSEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Larry Lynn Posey, appeals his convictions for evading arrest and theft of property. In two issues, he challenges the sufficiency of the evidence establishing his identity and the general sufficiency of the evidence to support his convictions. We affirm.

### BACKGROUND

Appellant was charged by indictment with evading arrest or detention with a motor vehicle and theft of property. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

After the presentation of evidence at trial and argument of counsel, the jury found Appellant "guilty" of both evading arrest or detention with a motor vehicle and theft of property. Appellant elected to have the court assess punishment and after hearing evidence, the trial court assessed punishment of twenty years' imprisonment for the evading arrest offense and ten years' imprisonment for the theft of property offense. The trial court sentenced Appellant accordingly and this appeal followed.

In his first issue, Appellant appears to argue that the trial court erred by allowing a police officer to testify following the suppression of her identification testimony, because the entirety of her testimony was "tainted," and there is insufficient evidence as to his identity absent the officer's identification testimony. In his second issue, Appellant argues that the evidence is insufficient to support the trial court's judgment. Because both issues challenge the sufficiency of the evidence, we will address them together.

**Standard of Review and Governing Law**

The ***Jackson v. Virginia***[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt.[2] *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by

---

[1] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

[2] Appellant appears to request that we perform a factual sufficiency review and re-weigh the evidence presented at trial. However, this Court follows precedent set by the Texas Court of Criminal Appeals' opinion in ***Brooks v. State***, in which the court determined that a legal-sufficiency standard of review is indistinguishable from a factual-sufficiency standard of review. 323 S.W.3d 893, 901 (Tex. Crim. App. 2010). As an intermediate appellate court, we are not at liberty to ignore binding precedent. ***Matamoros v. State***, 500 S.W.3d 58, 62 n.1 (Tex. App.—Corpus Christi 2016, no pet.) (citing ***Southwick v. State***, 701 S.W.2d 927, 929 (Tex. App.—Houston [1st Dist.] 1985, no pet.)). Factual sufficiency review is only available when a jury rejects an affirmative defense. ***Matlock v. State***, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Upon reviewing the record, we find no evidence that Appellant raised an affirmative defense or that the jury rejected such a defense. Therefore, we decline to complete a factual sufficiency review in this case. *See **Brooks***, 323 S.W.3d at 912.

the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

As is pertinent to the facts of this case, a person commits the offense of evading arrest or detention with a motor vehicle if he intentionally flees, using a vehicle, from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04 (West 2023). A person commits the offense of theft if he appropriates property without the owner's effective consent, with intent to deprive the owner of property. *Id*. § 31.03(a), (b)(1) (West 2023).

**Analysis**

The identification evidence contested by Appellant came from Officer Ashley Reed with the Tool Police Department. She was dispatched following 911 calls regarding the theft of a truck. When she arrived, she exited her own police vehicle to stop the truck and got a good look at the person driving when he slowly drove past her. She noted that the driver was a white male

wearing a white t-shirt and with tattoos on his head where she would have expected to see hair. Reed pursued the driver in her police vehicle, but lost sight of the truck. She believed that the driver was aware during the pursuit that she was attempting to stop him. Upon returning to the police department, Reed was shown photographs of two different individuals based on the description Reed gave when she saw the driver of the vehicle but she could not identify either individual as the driver of the stolen truck. Later, Reed received a photo of a man via text message to her personal cell phone, and Reed identified the man in the picture, Appellant, as the driver of the vehicle.

Before trial, Appellant moved to suppress any identification of himself by Officer Reed. He argued that the photographic "line-up" procedure by which Reed identified him during the investigation was "impermissibly suggestive," and that permitting her to identify him at trial would violate his Constitutional rights. Following the hearing on Appellant's motion, the court carried the motion to trial, explaining that the court would be able to better evaluate the motion at that time.

At trial, during Officer Reed's testimony, the court revisited Appellant's motion to suppress. After considering additional testimony and the arguments of counsel, the court held that Reed's out-of-court identification of Appellant was obtained using an impermissibly suggestive procedure, and therefore was inadmissible. The court further ruled that permitting Reed to make an in-court identification of Appellant would violate the Texas Code of Criminal Procedure.[3] However, she was allowed to testify regarding what she saw and did on the night of November 22, which occurred before she knew his identity.

We first note that Appellant incorrectly asserts that Officer Reed was allowed to identify Appellant as the driver of the stolen truck. The trial court ruled that her identification of Appellant from a nonstandard (and inadmissible) photographic lineup was impermissible and excluded her testimony about any photographs shown to her, and did not allow her to make any in-court identification of Appellant.

To the extent Appellant contends that the trial court impermissibly allowed Reed to testify as to her observations and actions unrelated to her identification of Appellant, Appellant directs us to no legal authority in support of his apparent argument that the entirety of Reed's

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 38.20 § 5(c) (West 2023).

testimony should have been excluded because his objection to part of her testimony was sustained. An appellant waives an issue on appeal if he fails to adequately brief that issue by omitting supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.–Houston [1st Dist.] 2021, no pet.) (citing *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *See Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (defendant inadequately briefed complaint where he neglected to present argument with citation to appropriate authority)). As the Texas Court of Criminal Appeals has stressed, an appellate court has no obligation to construct and compose issues, facts, and arguments with appropriate citations to authorities and the record for the appellant. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Busby*, 253 S.W.3d at 673. A brief that fails to apply the law to the facts does not comply with Texas Rule of Appellate Procedure 38.1 and presents nothing for our review. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). Because Appellant failed to comply with the requirements of Rule 38.1 as pertains to Officer Reed's non-identification testimony at trial, he waived his complaint.[4] *See* TEX. R. APP. P. 38.1.

We likewise conclude that Appellant waived review of his general assertions that the verdict was "predicated upon gossamer thin evidence" and the trial court "provide[d] the jury with a set of legally correct definitions and then simply turn[ed] them loose," and "accept[ed] whatever they decide[d]." The requirement that an appellant adequately brief his points of error applies to a criminal defendant's complaint that the evidence is insufficient to support his conviction. *Chaves*, 630 S.W.3d at 555 (citing *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997)). Because the Texas Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct arguments for an appellant, encompassed within Rule 38.1 is the party's task of explaining or discussing why an argument has substance. *See Wolfe*, 509 S.W.3d at 343. Here, Appellant's brief fails to include any analysis, argument, or citation to the record in support of his contention that the evidence is insufficient to support his convictions. He further fails to identify which of the essential elements of either offense is

---

[4] Even if the court did err in allowing some of Officer Reed's testimony, Appellant did not object to portions of Reed's testimony that did not involve her identification of Appellant. Nor do we find any abuse of discretion in the trial court allowing Officer Reed to testify as to her non-identification observations and actions.

lacking evidentiary support and omits any discussion of how the evidence adduced at trial fails to satisfy the State's burden of proof. *See Taylor v. State*, 558 S.W.3d 215, 218–19 (Tex. App.—Texarkana 2018, no pet.). Appellant's conclusory argument presents nothing for our review.

But even had Appellant not waived his complaints, substantial additional evidence supports a finding that Appellant was the individual who committed the charged offenses. This includes the testimonies and in-court identifications given by multiple witnesses, as discussed below.

On the evening of November 22, 2021, at around 8:00 p.m., Glenna Bradshaw was feeding cows on her property in Henderson County, Texas. Bradshaw's property was located right next to her mother, Twana Brown's, residence. While she was in the pasture, Bradshaw heard a vehicle and trailer driving very fast down Brown's driveway, followed by the sound of a crash. She walked around her barn to get a better view and saw only a truck moving quickly down the road, with no trailer. Shortly thereafter, Brown called Bradshaw and informed her that Brown's truck and trailer had been stolen. The driver crashed into the trees in a neighbor's yard, which ripped the trailer from the back of the truck. Bradshaw gave police a statement and then returned to her house.

Around 1:00 a.m. on the same night, Bradshaw was awakened by the sound of a vehicle revving its engine. She looked through her blinds and saw a vehicle in her yard with its lights on, facing her bedroom. Bradshaw called her mother, Brown, who immediately got into her own vehicle and drove over to Bradshaw's property. On the phone, Brown identified the vehicle in the yard as Bradshaw's ranch truck because the truck had cattle feed which Bradshaw purchased earlier that day stacked in the bed. Brown called 911, then called Bradshaw back, and both women witnessed the driver of the truck "sit up." The driver reversed the truck, running over Bradshaw's bee boxes in the process, then drove in front of the house toward the closed and locked front gate.

In response, Brown pulled her own truck up on the other side of Bradshaw's front gate, and for at least one minute, the driver of Bradshaw's truck proceeded to ram into the gate. Brown finally backed her truck away from the gate, at which time Bradshaw's gate fell off its hinges and the truck left the driveway with Brown in pursuit. Brown followed the stolen truck for approximately a half mile down the road until it turned left onto what Brown referred to as the "horseshoe" (officially named Rolling Acres Road), which connects to County Road 2404 in

6

two places.  The driver traveled about fifty feet down Rolling Acres Road, and then stopped the vehicle.  At this point, Brown saw headlights approaching her on County Road 2404 and confirmed with 911 that the approaching vehicle (driven by Officer Reed) was a police vehicle. Brown informed the dispatcher that the stolen vehicle stopped down Rolling Acres Road.  As Brown drove back toward Bradshaw's house on County Road 2404, she encountered a police car stopped in the road at a sideways angle and Officer William Jones of the Seven Points Police Department lying in the middle of the road.  She called 911 once more and remained with Jones until an ambulance arrived.

Bradshaw, who had also followed the unknown driver in the stolen truck, encountered the same scene as Brown, describing it as the scene of a "wreck" and the police vehicle as sitting sideways in a ditch.  She explained that the driver of the stolen truck collided with Jones's patrol vehicle before either she or Brown got there.  When the collision happened, approximately half of the cattle feed had been knocked out of the bed of Bradshaw's truck.

After the stolen truck collided with Jones's police vehicle, it went into a pond, and the driver fled the scene.  William Walker, an auto theft investigator employed by the Henderson County Sheriff's Office, was dispatched to the scene to assist in setting up a perimeter at approximately 1:30 a.m. on November 23.  Walker had been informed that the suspect was a white male with tattoos on his head, wearing a white t-shirt.  Walker learned of the additional theft of Brown's vehicle from other officers present.  Law enforcement was ultimately unable to locate the suspect and the perimeter was disbanded at around 6:00 a.m.  At that point, based on the description of the suspect, the area in which the thefts took place, and his experience investigating automobile thefts, Walker believed the suspect in question could be Appellant.

Approximately one week following this incident, Brown was shown a photo array which included Appellant's photograph, but she could not definitively identify any of the individuals as the person driving Bradshaw's truck on the night of the theft.[5]  However, during trial, Brown identified Appellant in court as the individual she witnessed stealing Bradshaw's truck on November 22.

Edith Holt, whose home is near the pond where the thief crashed Bradshaw's stolen truck, testified that a surveillance camera at her house captured footage of both the crash and the

---

[5] Regarding the photo array provided to Brown, both Walker and Brian Hall, the investigator who actually showed Brown the array, noted that witnesses are only able to identify an offender from such arrays about 25% of the time.

driver running across her yard. After reviewing the footage, Holt believed that Appellant was the person shown in the video and identified him in court. She formed her opinion based on knowing Appellant for over thirty years, since he was a child, and specifically noted his "distinct tattoos" and stature, as well as a Facebook post from the day of the incident showing Appellant wearing a white shirt and shoes.

Kevin Richardson, whose house is in front of the pond, was outside smoking a cigarette on the night in question. He witnessed police pursuing a vehicle and the vehicle's subsequent crash into the pond, as well as an individual leaving the vehicle and running away. Richardson stated that the individual "ended up" at his house shortly thereafter before police left the scene. He identified Appellant in court as the person he saw exiting the vehicle after crashing it. Richardson stated that he did not immediately figure out the driver's identity as Appellant but knew after viewing Holt's surveillance camera video. Richardson did not know Appellant well but knew him as a cousin's friend who sometimes visited the house. When Appellant arrived at Richardson's house, he wore jeans and a white t-shirt, and was "soaking wet." Appellant remained until daylight and then called a friend to pick him up.

Sergeant Patrick Johnson, patrol supervisor with the Henderson County Sheriff's Office, testified that he responded to the scene of the crash into the pond, contacted Holt, and obtained a copy of the surveillance video showing the crash and the driver fleeing. He stated that he had known Appellant for approximately five to eight years and identified Appellant in court as the person shown in the video. Similarly, Deputy Jonathan Barrios, also of the Henderson County Sheriff's Office, identified Appellant as the person shown in the video, and stated that he had known Appellant for roughly eight years prior to that night. Barrios cited Appellant's shaved head, stature, body size, and white shirt as features that helped him identify Appellant.

It was the sole province of the jury to judge the credibility of these witnesses and the weight to give their testimony, and we afford almost complete deference to its determination to believe the aforementioned identification testimony. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014) (jury is the sole judge of witness credibility and can believe all, some, or none of the testimony); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). When the record supports conflicting inferences, a reviewing court must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as

probative as direct evidence in establishing the accused's guilt. *Id.* A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances; the duty of a reviewing court is to ensure that the evidence presented supports a conclusion that the defendant committed the crime charged. *See Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.); *see also Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Here, the jury had sufficient evidence before it that Appellant was the driver of Bradshaw's stolen truck and evaded being stopped or detained by Officers Reed and Jones, who were attempting to stop the stolen vehicle and detain Appellant. When the stolen truck crashed into the pond, Appellant was identified as exiting the truck, fleeing the scene, and going to a nearby residence, all while soaking wet, to avoid being found and detained by law enforcement. Accordingly, a jury could reasonably conclude that Appellant was the person who committed the charged offenses.

For the above reasons, we overrule Appellant's sufficiency issues.

## DISPOSITION

Having overruled each of Appellant's issues, we ***affirm*** the judgment of the trial court.

**GREG NEELEY**
Justice

Opinion delivered January 31, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2024**

**NO. 12-23-00099-CR**

**LARRY LYNN POSEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR22-0085-392)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*